Benito QUINTANA, 315 Pierce Street, Bethlehem, Pennsylvania, Plaintiff,

v.

J. W. HOLLAND, District Director, Immigration and Naturalization Service, Philadelphia, Pennsylvania, Defendant.

Civ. No. 21950.

United States District Court
E. D. Pennsylvania.

Sept. 16, 1957.

John B. Brumbelow, Brumbelow & Comisky, Nelson Wollman, Wollman, Tracey, Schlesinger & Salus, Philadelphia, Pa., for plaintiff.

Harold K. Wood, U. S. Atty., Philadelphia, Pa., for defendant.

GRIM, District Judge.

Plaintiff was born in January, 1902, in Spain, a national of that country. He entered the United States on two occasions. He entered first with his father at Tampa, Florida, July 7, 1920, as an immigrant. He stayed until April, 1921, and then departed to join his father in Havana, Cuba. Plaintiff's second entry, the one we are here concerned with, was at New York, August 18, 1934, en route from Cuba to Spain as a passenger on the S.S. Habana. On arrival of the ship at New York he came ashore and the ship left August 20, 1934, without him. He had with him a Spanish certificate of nationality and a Spanish passport, both issued in Havana in the summer of 1934. Instead of reporting to the steamship company, as he had intended, that he had missed the boat, he went to see his brother, who lived on Long Island, and decided to stay there. Since 1934 he has remained in the United States. He lived and worked in and around New York until January, 1943, when he moved to Bethlehem, Pennsylvania, and obtained employment with the Bethlehem Steel Company. He registered under the Alien Registration Act of 1940, and on February 16, 1942, under the Selective Service Act, 50 U.S.C.A. Appendix, § 451 et seq.

On April 30, 1943, a warrant of arrest was issued against him by the Immigration and Naturalization Service on the ground that he was illegally in the country as an immigrant without a valid immigration visa. A hearing was held by an Inspector at Philadelphia on May 19, 1943. On June 14, 1943, plaintiff filed an application for the privilege of voluntary departure in lieu of deportation and for the privilege of pre-examination preparatory to application for an immigration visa. The Inspector found plaintiff deportable, but recommended the granting of voluntary departure and pre-examination. On August 5, 1943, the District Director concurred, and on August 23, 1943, the record was forwarded to the Board of Immigration Appeals with the Commissioner's concurrence in the recommendations. By order of November 6, 1943, the Board granted voluntary departure within six months and pre-examination. The time for departure was extended several times. Plaintiff married Marina Hermida, a Spaniard legally in the country, on February 17, 1947. On June 2, 1947, the Commissioner granted plaintiff's motion to reopen the record to permit him to apply for suspension of deportation under Sec. 19(c) of the Immigration Act of 1917, 8 U.S.C.A. former Sec. 155(c), as amended.* A hearing was held before an Inspector August 19, 1947. He recommended suspension of deportation, on

* Now 8 U.S.C.A. § 1254(a) (1, 2).

the basis of economic detriment which would result to plaintiff's wife, as well as plaintiff's apparently good behavior. The recommendation was approved by the Immigration and Naturalization Service on December 3, 1947, and in accordance with Sec. 19(c) the case was reported to Congress December 15, 1947. On July 6, 1949, Congress passed a resolution granting plaintiff adjustment of status. The effect of these procedures was to give plaintiff the status of a permanent resident of the United States.

On July 9, 1953, the District Director notified plaintiff of the government's intention to rescind his adjustment of status because of his membership in the Communist Party. On November 13, 1953, at an interview and hearing before a Special Inquiry Officer, a witness testified to seeing him at two Communist Party meetings, but he did not identify plaintiff as a Communist and testified that the meetings were not restricted to Communists alone. Plaintiff denied membership in the Communist Party. On June 30, 1954, the Special Inquiry Officer found that there had been a failure to establish that plaintiff was a Communist and that he was ineligible for adjustment of status. He recommended that the matter be terminated. The Acting District Director deferred action on this recommendation.

On November 1, 1954, the Acting District Director ordered the interview reopened because of newly discovered evidence and concluded that the Special Inquiry Officer who had decided that the matter be terminated was unavailable. The reopened interview and hearing was held December 29, 1954, and February 23, 1955, before an Immigration Officer. Plaintiff was given a full opportunity in this proceeding to appear in person and by counsel, to cross-examine witnesses, and to present evidence.

In this proceeding a witness testified that between 1945 and 1948, he knew plaintiff to be a Communist. The witness testified that he collected Communist Party dues of about 35 cents a month from plaintiff for part of this time, placing stamps on plaintiff's Communist card, which plaintiff carried, to show that the dues had been paid. He testified that he attended five or six Communist meetings at which plaintiff was present, and that these meetings were open only to Communist Party members. He testified further that he delivered Communist literature to plaintiff on several occasions. As a result of the testimony presented at the hearing on December 29, 1954, the Immigration Officer reported on March 30, 1955, that by reason of his membership in the Communist Party plaintiff had not been eligible for adjustment of status, and recommended rescission of the suspension of deportation.

The recommendation was approved by the District Director on March 30, 1955, and the Acting Regional Commissioner on April 11, 1955, ordered the matter submitted to Congress for consideration as to rescission of suspension of deportation under Section 246 of the Immigration and Nationality Act, 8 U.S.C.A. § 1256. The matter was submitted to Congress on May 6, 1955.

On April 9, 1956, Congress adopted the following

### Concurrent Resolution

"*Resolved* by the Senate (the House of Representatives concurring), That the Congress, in accordance with Section 246(a) of the Immigration and Nationality Act (8 U.S.C.A. § 1256(a), withdraws the suspension of deportation in the case of Benito Quintana Seara (A4363045) which was previously approved by the Congress."

On May 3, 1956, the District Director notified plaintiff of this Congressional action and requested prompt surrender of his Alien Registration Receipt Card.

On January 9, 1957, following plaintiff's failure to leave the country under his privilege of voluntary departure, the Board of Immigration Appeals withdrew the order of voluntary departure and ordered plaintiff deported.

In the present case plaintiff seeks a declaratory judgment that the rescission of the adjustment of his status, and hence the order of deportation, are null and void, and that he has the status of an alien lawfully admitted for permanent residence. He also asks for an injunction against his arrest and deportation. Both parties have moved for summary judgment.

It appears that there is no dispute as to the facts above stated.

Plaintiff contends that the action to rescind his adjustment of status and to withdraw the suspension of his deportation was taken too late because more than five years intervened between the 1949 Congressional resolution which granted him adjustment of status and the determination by the Attorney General that plaintiff was not eligible for adjustment of status. He points to the Immigration and Nationality Act of 1952, which provides: (8 U.S.C.A. § 1256)

"If at any time within five years after the status of a person has been adjusted * * * to that of an alien lawfully admitted for permanent residence, it shall appear to the satisfaction of the Attorney General that the person was not in fact eligible for such adjustment of status, the Attorney General shall submit to the Congress a complete and detailed statement of the facts and pertinent provisions of law in the case. * * * If during the session * * * or prior to the close of the session * * * next following the session at which a case is reported, the Congress passes a concurrent resolution withdrawing suspension of deportation, the person shall thereupon be subject to all provisions of this chapter to the same extent as if adjustment of status had not been made."

Plaintiff's contention is that in order that proceedings and action under this section be valid a new determination of the Immigration and Naturalization Service must be made within five years of the original adjustment of status, and that since no determination was made within five years after the resolution of July 8, 1949, was passed, the suspension of deportation is invalid and of no effect.

■ With this contention I do not agree. While there is language in the statute which appears to limit the time within which the Attorney General (acting through the Immigration and Naturalization Service, Jay v. Boyd, 1956, 351 U.S. 345, 352, Note 8, 76 S.Ct. 919, 100 L.Ed. 1242 has power to act, there is no limitation on Congress save the self-imposed requirement that it act during the session at which a case is reported to it or during the session following. Since Congress passed its concurrent resolution of 1956 at the session immediately following the session in which the case was reported to it, the action of Congress was valid and the suspension of deportation was valid.

■ There is ample evidence in the administrative record to support the findings of plaintiff's Communist affiliations and membership in the Communist Party.

The Immigration and Nationality Act of 1952 provides: (8 U.S.C.A. § 1251)

"Any alien in the United States * * * shall, upon the order of the Attorney General, be deported who—* * * (6) is or at any time has been after entry a member of any of the following classes of aliens: * * * (C) Aliens who are members of or affiliated with (i) the Communist Party of the United States * * *."

Thus Congress has expressed clearly its policy that Communists who are aliens should be deported. No limit is placed upon the time within which alien Communists can be deported. To say that Congress cannot rescind its action granting suspension of deportation unless the Attorney General determines within five years of an adjustment of status that a mistake was made, would be reading into the statute more than is there. The cases which plaintiff cites to support this

contention that the joint resolution of April 9, 1956, was too late and therefore of no effect are not in point since they involve statutes with different words and meanings.

Plaintiff contends that he was not afforded due process of law in the course of the rescission proceedings because of the manner in which the proceedings were conducted. I disagree with this contention. He was given a full and fair hearing. All the procedural requirements of the Immigration and Nationality Act and the regulations of the Attorney General in respect thereto were followed carefully. The conclusion that plaintiff is a deportable alien is amply supported by credible evidence in the record. Without stating in detail plaintiff's numerous legal contentions with respect to lack of due process I can say that in my opinion they have already been decided against him properly by numerous decisions of other courts.[1]

Plaintiff's motion for an injunction is denied. Plaintiff's motion for summary judgment in his favor is denied. Defendant's motion for summary judgment in his favor is granted.

---

[1] It should be pointed out that plaintiff has attacked only the procedure prior to the passage of the Concurrent Resolution of April 9, 1956. No complaint is made of any defect in the subsequent proceedings.